# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | |
|---|---|
| **MATTHEW HODGE, DAVID HOLBROOK, PHILIP KAY, JACOB FRANCKOWIAK, BROOKS DICKERSON,** and **RALPH BROWN**, individually and on behalf of all others similarly situated, | Civil Action No.: 5:19-cv-478 |
| Plaintiffs, | Class Action<br>Jury Trial Demanded |
| v. | |
| **NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY** and **DIVISION OF ADULT CORRECTION AND JUVENILE JUSTICE,** | |
| Defendants. | |

## PLAINTIFFS' CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs, Matthew Hodge, David Holbrook, Philip Kay, Jacob Franckowiak, Brooks Dickerson, and Ralph Brown (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class" or "FLSA Collective," as more fully defined below), upon personal knowledge of the facts pertaining to themselves and on information and belief as to all other matters, bring this Complaint against Defendants, North Carolina Department of Public Safety ("DPS") and Division of Adult Correction and Juvenile Justice ("DAC") (collectively "Defendants"), alleging as follows:

## INTRODUCTION

1.      Unless the Complaint states otherwise, the allegations pertain to the time period from three years before the date of filing of the Complaint through the present day (the "Relevant Time Period").

2.    At all times during the Relevant Time Period, Plaintiffs and the Class members were and/or are non-exempt, hourly-paid employees of Defendants working as Corrections Officers at DPS facilities across the State of North Carolina.[1]

3.    This is a collective/class action brought by Plaintiffs individually and on behalf of all similarly-situated current and former Corrections Officers employed by Defendants to recover unpaid wages owed under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; the express written contract entered into by the parties; and the common laws of the State of North Carolina.

4.    Plaintiffs and the Class members are and were paid pursuant to Section 7(k) of the FLSA, which allows payment of overtime to "any employee in law enforcement activities (including security personnel in correctional institutions)" based on a 28-day work period, known as a "tour of duty" rather than the traditional 40-hour work week.  29 U.S.C. § 207(k). Plaintiffs and the Class members are, therefore, entitled to receive overtime pay (or compensatory time) at the rate of one and one-half times their regular rates of pay for all hours worked over 171 hours in their 28-day tours of duty.  Defendants' failure to pay Plaintiffs and the Class members for all overtime hours worked forms the basis of their FLSA claim.

5.    Plaintiffs and the Class members are entitled to receive compensation for all straight-time hours worked, including gap hours, pursuant to Defendants' State Human Resources Manual, DPS Policy & Procedures, and  DPS New Employee Manual, which form contracts between themselves and Defendants (the "Contracts").[2]  Specifically, although public

---

[1] The term "Class" refers to the members of the FLSA Collective and Rule 23 Class, defined in Paragraphs 79 and 86 below.

[2] True and correct copies of the documents (or excerpts of the documents) which form the Contracts are attached hereto as follows:  State Human Resources Manual, Section 4 (Exhibit B); State of

sector collective bargaining is disallowed in the State of North Carolina, Defendants assert a level of control over Plaintiffs and the Class members that is similar to a bargained for contract. Defendants imposed the Contracts on Plaintiffs and the Class members, which they accepted through their continued employment with Defendants. The Contracts provide, amongst other things, that Plaintiffs and the Class members will be paid for all hours worked, including gap hours, up to 171 hours in a 28-day tour of duty, at their straight time rates. The Contracts form the basis of Plaintiffs' and the Class members' common law breach of contract claim.

6. During the Relevant Time Period, Plaintiffs and the Class members have been paid for a standard 12.25 hours per shift, regardless of the hours that they actually worked.

7. During the Relevant Time Period, Defendants have required Plaintiffs and the Class members to arrive before the start of their shifts in order to pass through security, gather and put on critical safety equipment, and perform other pre-shift work critical to the safety and security of the prisons and their occupants. After going off-the-clock at the end of their shifts, Plaintiffs and the Class members are required by Defendants to wait for relief, share information with the officer coming on-shift, return equipment, and travel from their post to the facility exit.

8. All of the above-referenced activities, as well as others set forth herein (and those that will be adduced through discovery in this matter), are performed while in the presence of or in close proximity to inmates. Plaintiffs and the Class members are, therefore, required to remain vigilant and respond to emergencies, as necessary, at all times while they are performing this pre- and post-shift work at prison facilities. That is, they remain on duty from the moment they enter the prisons until they leave. As such, Plaintiffs and the Class members are engaged in the principal activity of maintaining the safety and security of Defendants' facilities and performing

North Carolina Department of Public Safety Prisons Policy & Procedures (Exhibit C); and North Carolina Department of Public Safety New Employee Manual (Exhibit D).

activities that are integral and indispensable to that principal activity. These activities constitute compensable work under the FLSA. Plaintiffs and the Class members are also contractually entitled to be paid for this pre- and post-shift work pursuant to the Contracts.

## JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction over the FLSA claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this action involves a federal question under the FLSA.

10. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the FLSA claim over which the Court has original subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11. This Court has personal jurisdiction over Defendants because they operate within the State of North Carolina and within this District.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

A.  **Plaintiffs**

13. Matthew Hodge is a resident of Spindale, North Carolina and a citizen of the State of North Carolina. He was employed by Defendants as a Corrections Officer I from 2016 until on or around June 20, 2019. During the Relevant Time Period, he worked for Defendants primarily at Rutherford Correctional Center in Spindale, North Carolina. During the Relevant Time Period, he also worked at Swannanoa Correctional Center for Women in Black Mountain, NC and Alexander Correctional Institution in Taylorsville, NC. His written consent to join this action is attached as Exhibit A-1.

4

14.     David Holbrook is a resident of Morganton, North Carolina and a citizen of the State of North Carolina. He has been employed by Defendants as a Corrections Sergeant since 2007.  During the Relevant Time Period, he worked for Defendants primarily at Rutherford Correctional Center in Spindale, North Carolina.  During the Relevant Time Period, he also worked at Swannanoa Correctional Center for Women in Black Mountain, NC, and Alexander Correctional Institution in Taylorsville, NC. His written consent to join this action is attached as Exhibit A-2

15.     Philip Kay is a resident of Asheville, North Carolina and a citizen of the State of North Carolina. He has been employed by Defendants as a Corrections Officer II since in or around March 2013.  During the Relevant Time Period, he has worked at Craggy Correctional Center in Asheville, North Carolina.  His written consent to join this action is attached as Exhibit A-3.

16.     Jacob Franckowiak is a resident of Spruce Pine, North Carolina and a citizen of the State of North Carolina. He has been employed by Defendants as a Corrections Officer since in or around 2012.  During the Relevant Time Period, he has worked at Avery-Mitchell Correctional Institution in Spruce Pine, North Carolina.  His written consent to join this action is attached as Exhibit A-4.

17.     Brooks Dickerson is a resident of Fair Bluff, North Carolina and a citizen of the State of North Carolina. He has been employed by Defendants as a Corrections Officer II since in or around 2007.  During the Relevant Time Period, he has worked at Columbus Correctional Institution in Whiteville, North Carolina.  His written consent to join this action is attached as Exhibit A-5.

18.     Ralph Brown is a resident of Hudson, North Carolina and a citizen of the State of North Carolina. He was employed by Defendants as a Corrections Officer from in or around 2010 through in or around June of 2017.  During the Relevant Time Period, he worked at Alexander Correctional Institution in Taylorsville, NC.  His written consent to join this action is attached as Exhibit A-6.

19.     At all relevant times, Plaintiffs and the Class members have been engaged in commerce or in the production of goods for commerce within the meaning of Sections 6 and 7 of the FLSA, 29 U.S.C. §§ 206-207.

**B.     Defendant DPS**

20.     DPS is an agency of the State of North Carolina, established and empowered by N.C. Gen. Stat. §§ 143B-600, *et seq.*  DPS's stated mission is to "safeguard and preserve the lives and property of North Carolinians through prevention, protection and preparation with integrity and honor."  *See* www.ncdps.gov/about-dps (last accessed Oct. 23, 2019).  DPS owns and/or operates correctional facilities across the State of North Carolina, where Plaintiffs and the Class members work or have worked.

21.     At all relevant times, DPS has been a public agency and an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22.     At all relevant times, DPS has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

23.     At all relevant times, DPS has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s)(1).

**C.** **Defendant DAC**

24.     DAC is division of DPS, established and empowered by N.C. Gen. Stat. §§ 143B-630, *et seq*.  DAC "is responsible for the care, custody and supervision of all adults and juveniles sentenced after conviction for violations of North Carolina law."  *See* https://www.ncdps.gov/division-adult-correction-and-juvenile-justice (last accessed Oct. 23, 2019).  It also "provides training for employees across the Department of Public Safety." *See* https://www.ncdps.gov/Adult-Corrections/Staff-Development-Training (last accessed Oct. 23, 2019).

25.     At all relevant times, DAC has been a public agency and an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

26.     At all relevant times, DAC has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

27.     At all relevant times, DAC has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s)(1).

**GENERAL ALLEGATIONS**

28.     North Carolina's general statutes direct Defendants to provide adequate custodial care, educational opportunities, and medical and psychological treatment services to all incarcerated persons.  N.C. Gen. Stat. §§ 143B-600, *et seq*.

29.     To fulfill this function, Defendants operate 55 correctional institutions across the State of North Carolina, at which they employ or have employed Corrections Officers, including Plaintiffs and the Class members.

30.     A list of all DPS correctional institutions may be found on DPS's website.  *See* www.ncdps.gov/Adult-Corrections/Prisons/Prison-Facilities (last accessed Oct. 23, 2019).

7

**A. Plaintiffs and the Class Members Are Entitled to Overtime Compensation Pursuant to the Same Common Contracts, Plans, Policies, and Practices of Defendants**

31.     Plaintiffs and the Class members have been employed as Corrections Officers during the Relevant Time Period at various correctional facilities owned and operated by Defendants throughout the State of North Carolina.

32.     During the Relevant Time Period, Plaintiffs and the Class members have been subject to the same Contracts, plans, policies, and practices related to compensation, recording of their hours worked, scheduling, entitlement to overtime, security protocols, compensatory time, tours of duty, entitlement to be paid for all hours worked, and required pre- and post-shift work.

33.     Plaintiffs and the Class members have been subject to the same terms and conditions of employment described herein throughout the Relevant Time Period, regardless of which of these types of institutions at which they have worked, the level of custody at the facility, the types or identities of offenders housed at the facility, their officer rank (whether Corrections Officer I, II, or III, or Sergeants), whether they work on a day shift or night shift, or other factors.

34.     During the Relevant Time Period, Plaintiffs and the Class members have been subject to the State Human Resources Manual, including Section 4, Salary Administration.[3] Plaintiffs and the Class members are considered "employees in law enforcement activities," which includes "security personnel in correctional institutions."   State Human Resources Manual, Salary Administration, Section 4, p. 71 (Ex. B).   These institutions include any government facility maintained as part of a penal system for the incarceration or detention of

---

[3] On information and belief, the prior version of the State Human Resources Manual, Section 4, Salary Administration contained substantially similar terms as those described herein.

persons suspected or convicted of having breached the peace or committed some other crime. Such facilities include penitentiaries; prisons; prison farms; county, city, and village jails; precinct house lockups; and reformatories.

35.    During the Relevant Time Period, Plaintiffs and the Class members have been paid pursuant to Section 7(k) of the FLSA.  Consistent with Section 7(k), their "work period" or tour of duty consists of 28 consecutive days. *See* 29 U.S.C. § 207(k); State Human Resources Manual, Salary Administration, Section 4, p. 72 (Ex. B).

36.    Pursuant to the FLSA and the Contracts, Plaintiffs and the Class members are entitled to overtime compensation at the rate of one and one-half times the regular hourly rate at which they are employed for hours which, in the aggregate, exceed 171 hours in a 28-day tour of duty.[4] *Id*.

37.    Plaintiffs and the Class members are typically scheduled for 160 hours in a 28-day tour of duty. The hours between the regular schedule of 160 hours and the maximum number of straight-time hours (171) are known as "gap hours."  When Plaintiffs and the Class members work gap hours, they are entitled, pursuant to the Contracts, to compensation at their regular hourly rate of pay.  The overtime rate is legally required to begin after 171 hours.

38.    Section 4 of the State Human Resources Manual contains Special Provisions relating to Law Enforcement Activities.  During the Relevant Time Period, Plaintiffs and the Class members have been subject to these Special Provisions.

---

[4] Alternatively, pursuant to the FLSA and the Contracts, as a public employer, Defendants may provide Plaintiffs and the Class members with compensatory time at the rate of one and one-half times the hours actually worked in lieu of cash payment for their overtime hours.  *See* 29 U.S.C. § 207(o). Defendants have not, however, paid Plaintiffs or the Class members either cash overtime payments, or compensatory time, for the work that is the subject of this action.  Plaintiffs and the Class members are equally damaged when they are not given the compensatory time to which they are entitled, which can be used as paid time off or, if it is not used within 180 days, converts to a cash payment pursuant to the Contracts.

39.     The Special Provisions for Law Enforcement Activities provides:

The term "tour of duty" is a unique concept applicable only to employees in law enforcement and fire protection activities. This term means the time during which an employee is considered to be on duty for purposes of determining compensable hours. It may be a scheduled or unscheduled period. Scheduled periods also include time spent in work outside the "shift" which the public agency employer assigns. Unscheduled periods include time spent in court by officers, time spent handling emergency situations and time spent working after a shift to complete an assignment. Such time must be included in the compensable tour of duty even though the specific work performed may not have been assigned in advance….

State Human Resources Manual, Salary Administration, Section 4, pp. 74-75 (Ex. B).

40.     The aforementioned language of the Special Provisions constitutes an agreement to pay Plaintiffs and the Class members their hourly rate for all on duty time, including unscheduled periods (outside their paid 12.25 hour day).

41.     Defendants promised Plaintiffs and the Class members, through the Contracts, that they would pay them for all hours worked up to 171 hours, including gap hours, at their straight time rate of pay (or as compensatory time), subject to offsetting.

42.     During the Relevant Time Period, Plaintiffs and the Class members have been subject to the DPS New Employee Manual. On information and belief, the current version of the New Employee Manual was released in 2017. On information and belief, the prior version was released in 2015 and contains substantially similar provisions to those discussed herein.

43.     The DPS New Employee Manual describes Gap Hours as follows:

Gap Hours, also known as straight time, are those hours that are caught in the gap between the maximum hours of work required to meet the work schedule standard and the overtime threshold. Gap hours ONLY apply to employees subject to overtime. These hours are subject to leave offsetting and are first applied to advanced leave liabilities and adverse weather leave.

The employee shall receive straight time compensation in either cash payout or compensatory leave for the remaining gap hours worked after offsetting depending on the position classification. It is the decision of agency management in consideration of budget and organization needs whether compensation will be

made monetarily (cash) or as time off. The decision to pay cash versus compensatory time off is not an employee decision.

New Employee Manual, p. 15 (Ex. D).

44.     Plaintiffs and the Class members are each scheduled to work 12-hour shifts. The shifts run from either 6:00 a.m. until 6:00 p.m. (day shift) or 6:00 p.m. until 6:00 a.m. (night shift). In either case, they must arrive at lineup by 5:45.

45.     Plaintiffs and the Class members are, without material exception,[5] paid this standard 12.25 hours, regardless of the hours that they actually work. That means that, when Plaintiffs and the Class members begin performing compensable work before their shifts begin at 5:45 or continued to perform compensable after their shifts end at 6:00, they are not paid for any work time beyond 12.25 hours.

46.     The extra quarter hour (.25, or fifteen minutes) reflects the amount of time Plaintiffs and the Class members spend in the mandatory daily, pre-shift lineup, which begins at 5:45 a.m. (day shift) or 5:45 p.m. (night shift). It does not, however, compensate them for the substantial mandatory off-the-clock work, described herein, that Defendants require them to perform before the start of each pre-shift lineup and after the end of each shift.

**B.      Plaintiffs and the Class Members Have Performed Significant Amounts of Compensable Pre- and Post-Shift Off-The-Clock Work**

47.     Defendants routinely suffer and permit Plaintiffs and the Class members to perform pre- and post-shift off-the-clock work for which they are not compensated.

48.     The primary of goal of DPS prisons "is to protect the citizens of North Carolina and provide a safe and humane environment for staff and offenders. Appropriate staffing levels,

---

[5] Plaintiffs and the Class members are, for example, paid beyond their scheduled shift when a supervisor asks them to stay for another whole shift, or they are asked to stay to handle an emergency. However, no allowance is made to pay for the additional, routine, off-the-clock work that Defendants require Plaintiffs and the Class members to perform each day, as described herein.

supervisory organizational structure, Correctional Officer duties, and effective management of security posts are all key factors in the success of any prison system." DPS Policy & Procedures Ch. F, § .1601(a) (Ex. C).[6]

49.     "Correctional Officers are responsible for the control, custody, and welfare of offenders within their assigned areas. Duties are to be performed adequately. Discipline and security are to be maintained, and policies relating to the welfare of offenders implemented daily." *Id*. § .1605(a).

50.     New officers are to receive orientations that "should include a thorough briefing on all-basic security functions, departmental rules, procedures and post orders. All training related to security and specific post assignments will be documented in facility records." *Id*. § .1604(f).

51.     Plaintiffs and the Class members "shall have a thorough knowledge of policy to provide effective supervision of offenders. [They] must be capable of acting reasonably and efficiently in emergencies in accordance with established policies and procedures." *Id*. § .1605(b).

52.     Pre-shift duties performed off-the-clock by Plaintiffs and the Class members include waiting onsite at the prison, clearing security-related checkpoints, collecting and/or donning uniforms, equipment, and/or tools necessary for their duties—including keys and radios, waiting for line-up while preparing for the day, and traveling through the prison facility to arrive at the pre-shift briefing location.

---

[6] *See* https://www.ncdps.gov/adult-corrections/prisons/policy-procedure-manual (last accessed Oct. 23, 2019).

53. After completing this pre-shift work, Plaintiffs and the Class members are required to attend a shift briefing, where they are inspected by the Officer-In-Charge "to determine that they are appropriately attired and prepared for duty." *Id*. § .1604(o). Only at the beginning of the pre-shift briefing do they begin to be compensated.

54. At the end of their shifts, Plaintiffs and the Class members are required to wait at their post until the relieving officer arrives, perform a pass-down or exchange of information, doff and/or return equipment and tools necessary for their duties, and travel through the prison facility to exit. This activity happens after Plaintiffs and the Class members are no longer on-the-clock.

55. Defendants mandate that "Correctional Officers shall remain alert and in full possession of their faculties at all times while on duty. Failure to remain alert is unacceptable personal conduct and shall be cause for discipline consistent with the NCDPS-Prisons Disciplinary Policy and Procedures." *Id*. § .1605(p). To that end, Plaintiffs and the Class members are required to be on alert and remain vigilant and respond to emergencies at all times while in prison facilities and while performing pre- and post-shift work because they are in the presence of, or in close proximity to, inmates.

56. This pre- and post-shift work is part of Plaintiffs' and the Class members' principal activities of guarding the inmates and DPS facilities and maintaining safety and security therein. It is also integral and indispensable to those principal activities.

57. For example, Plaintiffs and the Class members are required to abide by a Key and Lock Control during pre- and post-shift work "to maintain effective security through control of all doors, gates, grills and other locking devices that comprise physical plant security both inside and outside of the perimeter. This policy will ensure that correctional staff will have total

13

command of all keys and locking devices supplies, equipment and storage areas that support the key control program. In addition, this policy will promote safety by ensuring that in case of fire or other emergency, exit keys will be readily accessible to designated correctional staff." *Id*. § .2401.

58.     Plaintiffs and the Class members must also abide by the DPS Prison Entrance/Exit Policy, which was implemented "[t]o establish procedures to identify all persons, to search for contraband and to maintain safety and security at all facilities by utilizing metal detection, routine searches (pat/frisk) and special procedures for employee searches." *Id*. § .3301. They are required to be "processed through the main entrance of the institution." *Id*. § .3304.

59.     Plaintiffs and the Class members "must be processed by passing through metal detection." *Id*. § .3307(b)(4). They also "shall receive a routine search (pat/frisk) upon entry to a facility" and "are subject to a routine search of their person and personal effects" upon leaving. *Id*. § .3307(c)(1), (3).  This process ensures that weapons and other contraband which could be used by prisoners to undermine safety and security are not brought into the facilities.

60.     Should Plaintiffs and the Class members refused to submit to any search, they "shall be denied access to the facility" and subject to disciplinary action, including dismissal. *Id*. § .3307(d)(4)(A).

61.     Plaintiffs and the Class members are "processed through the Gatelog system, having their card swiped. The officer operating the Gatelog system computer will positively identify the employee by photo identification after their card has been swiped. If a facility does not have the Gatelog system, departmental official visitors will sign in/out in an appropriate log book. The staff member will present his/her departmental identification card to entrance/exit point staff prior to entering or exiting the facility." *Id*. § .3305(c)(3).

62.     These logs are not used for timekeeping purposes.  Instead, Plaintiffs and the Class members are uniformly paid the standard 12.25 hours per day, regardless of the hours they actually performed compensable work.

63.     Defendants do not maintain accurate records of the time worked by Plaintiffs and the Class members as required by the FLSA.

64.     Plaintiffs and the Class members are not permitted to bring cell phones, pagers, personal computers, PDAs, iPads, or a host of other items into DPS facilities. *Id*. § .3306(a)(12), (c).  This prohibition ensures that such items cannot be used inside the facilities in a manner which would undermind safety and security.

65.     Plaintiffs and the Class members must undergo extensive training in areas specifically related to their pre- and post-shift work, including but not limited to Defendants' security procedures, safety procedures, supervision of offenders, key control, and communication skills. *Id*. Ch. A, § .0904(c).

66.     Plaintiffs and the Class members are informed by their supervisors that they must arrive early in order to clear security, collect their equipment and tools, proceed to the area where they must report to lineup and be at lineup, in uniform, and ready to work, by 5:45.

67.     Plaintiffs and the Class members are required to attend lineup beginning at 5:45, but they are required to arrive at their facilities as early as 5:00 a.m. in order to perform their pre-shift work and arrive at lineup on time.

68.      Plaintiffs and the Class members frequently work and record over 171 hours in a 28-day tour of duty.  For example, during the pay period of February 1, 2018 through February 28, 2018, Plaintiff, Hodge, was compensated for 74.25 overtime hours (or 245.75 total hours); and during the pay period of July 1, 2018 through July 31, 2018, he was compensated for 12.25

overtime hours (or 183.75 total hours). However, he performed an additional 0.5 hours of compensable work before and after each shift (or 10 hours in each 28-day tour of duty) that was not compensated at either his regular or overtime rate of pay.

69. Defendants know or have reason to know that Plaintiffs and the Class members are performing compensable pre- and post-shift work on a regular basis. For example, Defendants instruct Plaintiffs and the Class members to arrive early in order to perform certain pre-shift duties and arrive at lineup by 5:45. Defendants also require Plaintiffs and the Class members to remain at their posts until the relieving officer arrives, and Defendants know or have reason to know that the relieving officers often arrive late.

70. Defendants also know *exactly* when Plaintiffs and the Class members arrive and depart from their facilities because Plaintiffs and the Class members are required to swipe a card. Those card swipes are not used for timekeeping or payroll purposes. However, on information and belief, these swipe card records show that Plaintiffs and the Class members worked at their facilities for far more time than that for which they were paid.

71. These hours worked for which they should have been paid include: (1) hours under 171, which Defendants promised to pay and for which Plaintiffs and the Class members are entitled to recover, pursuant to the Contracts; and (2) hours over 171, for which Plaintiffs and the Class members are entitled to recover pursuant to the FLSA.

72. Defendants' policy and practice of requiring off-the-clock work (both straight time and overtime) apply equally to all Plaintiffs and the Class members, State-wide, during the Relevant Time Period.

73.     Defendants were aware or should have been aware of the FLSA's overtime requirements and were also aware of the promises they made through the Contract to pay Plaintiffs and the Class members for all straight-time hours worked.

74.     Defendants nonetheless suffered or permitted Plaintiffs and the Class members to work off-the-clock without compensation.

75.     Defendants suffered or permitted Plaintiffs and the Class members to work over 171 hours in a 28-day tour of duty without compensation for all hours over 171 in the tour at one and one-half times their regular rates of pay.

76.     Defendants knew, or acted with reckless disregard for whether, Plaintiffs and the Class members worked in excess of 171 hours in individual 28-day tours of duty without receiving overtime at the rate of one and one-half times their regular rates of pay for hours worked over 171 in a 28-day tour.

77.     Defendants' failure to pay straight time to Plaintiffs was, and is, a breach of their Contracts with Plaintiffs and the Rule 23 Class members. Defendants' failure to pay overtime to Plaintiffs and the FLSA Collective members was, and is, a willful violation of the FLSA. Defendants did not act in good faith when they failed to pay Plaintiffs and the Class members for all hours worked over 171 in a 28-day tour of duty at the rate of one and one-half times their regular rates of pay.

## COLLECTIVE ACTION ALLEGATIONS

78.     Plaintiffs bring their FLSA claims individually and on behalf of similarly-situated employees who were not paid for all of their overtime hours during tours of duty worked for Defendants.

79.     The collective of similarly situated employees sought to be certified as a collective action under the FLSA is defined as:

All current and former non-exempt, hourly-paid employees of Defendants who worked as security personnel in a correctional institution at any time during the Relevant Time Period ("FLSA Collective").

80.     Plaintiffs have consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b), and their consent forms are attached as Exhibits A-1 through A-6. As this case proceeds, it is likely that additional individuals will file consent forms and join as "opt-in" plaintiffs.

81.     Plaintiffs seek conditional and final certification of this collective action under 29 U.S.C. § 216(b).

82.     Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the FLSA Collective members at the rate of one and one-half times their regular rates of pay for all hours worked in excess of the relevant statutory overtime threshold.

83.     There are many similarly-situated current and former employees of Defendants who—in violation of the FLSA—have been underpaid, in that they have not received all overtime compensation to which they are legally entitled, and who would benefit from issuance of Court-supervised notice of this lawsuit and the opportunity to join the lawsuit.  Thus, notice should be sent to FLSA Collective members pursuant to 29 U.S.C. § 216(b).

84.     The similarly-situated employees are known to Defendants, are readily-identifiable, and can be located through Defendants' records.

## CLASS ACTION ALLEGATIONS

85.     Plaintiffs bring their breach of contract claims under the common law of the State of North Carolina as a class action under Federal Rule of Civil Procedure 23.

86.     The Class of employees sought to be certified as a class action under Federal Rule of Civil Procedure 23 is defined as:

18

All current and former non-exempt, hourly-paid employees of Defendants who worked as security personnel in a correctional institution in the State of North Carolina at any time during the Relevant Time Period ("Rule 23 Class").

87.     Defendants are liable for breach of contract to Plaintiffs and the Rule 23 Class members for breaching the Contract wherein they promised to pay Plaintiffs and the Rule 23 Class members for all hours worked, up to 171 hours in a 28-day tour of duty, at their regular hourly rate of pay.

88.     Numerous individuals were victimized by Defendants' policies and practices of refusing to pay Plaintiffs and the Rule 23 Class members for all hours worked. Specifically, Plaintiffs and the Rule 23 Class members did not receive pay for their hours worked when they performed the significant pre- and post-shift work and were required to be available to respond to emergencies as described herein, in breach of the Contracts with Defendants.

89.     Defendants have consistently and uniformly applied policies and practices requiring Plaintiffs and the Rule 23 Class members to work off-the-clock, without compensation, both before and after their paid shifts.

90.     Based on their experience working for Defendants, Plaintiffs are aware that Defendants' illegal policy or practice of failing to pay for all hours worked was uniformly imposed on the Rule 23 Class members.

91.     Plaintiffs and the Rule 23 Class members are paid in the same manner, pursuant to Section 7(k) of the FLSA and the Contracts. Each of them is required to arrive at work early enough to complete their pre-shift tasks and arrive at lineup by 5:45. None of them are paid for their pre-shift work. Each is also required to remain at work until relief arrives, and to complete various other post-shift tasks before ending work for the day. Similarly, none of them are paid for their post-shift work and for the time that they are required to be available to respond to emergencies.

19

92.     Plaintiffs' experiences are therefore typical of those of the Rule 23 Class they seek to represent.

93.     Defendants' failure to pay Plaintiffs and the Rule 23 Class members the hourly wages to which they are entitled results from a generally applicable, systemic, policy or practice, which is not dependent on the personal circumstances of the Rule 23 Class members, but rather, was applied equally to all Rule 23 Class members.

94.     Upon information and belief, Defendants employed thousands of Rule 23 Class members during the Relevant Time Period.  The precise numbers and identities of the Rule 23 Class members are identifiable from the business records, tax records, and/or employee and personnel records maintained by Defendants.

95.     Plaintiffs have no interests contrary to or in conflict with the Rule 23 Class members they seek to represent, nor does their counsel.

96.     Like each Rule 23 Class member they seek to represent, Plaintiffs have an interest in obtaining the unpaid wages owed pursuant to their Contracts with Defendants.

97.     A class action such as this one is superior to other available means for fair and efficient adjudication of the lawsuit.

98.     Absent a class action, many of the Rule 23 Class members will not obtain redress of their injuries and Defendants will reap the unjust benefits of breaching their Contracts with Plaintiffs and the Rule 23 Class members.

99.     Even if some of the Rule 23 Class members Plaintiffs seek to represent could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

100.    If individual actions were required to be brought by each Rule 23 Class member, it would necessarily result in a multiplicity of lawsuits and it would create hardship to Rule 23 Class members, Defendants, and the Court.

101.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Rule 23 Class members and provide for judicial consistency.

102.    The questions of law and fact common to each of the Rule 23 Class members predominate over any questions affecting solely the individual members.   Among the common questions of law and fact are:

    a.    Whether there is a contract between Defendants, on the one hand, and Plaintiffs and the Rule 23 Class members, on the other, requiring Defendants to pay Plaintiffs for all hours worked up to 171 in a 28-day tour of duty;

    b.    Whether Plaintiffs and the Rule 23 Class members performed work for which they were not paid;

    c.    Whether Defendants knew or had reason to know that Plaintiffs and the Rule 23 Class members performed this work

    d.    Whether Plaintiffs and the Rule 23 Class members were in prison facilities and/or in the presence of inmates while performing this work;

    e.    Whether Plaintiffs and the Rule 23 Class members were required to remain vigilant and respond to emergencies while performing this work and in prison facilities;

    f.    Whether Defendants have maintained accurate records of the time worked by Plaintiffs and the Class members as required by the FLSA; and

g. Whether Defendants have any contractual defenses which bar the claims of Plaintiffs and Rule 23 Class members.

103. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

104. Plaintiffs will fairly and adequately represent and protect the interests of the Rule 23 Class members.

105. Plaintiffs have retained counsel who are qualified and experienced in the litigation of class actions.

**CAUSES OF ACTION**

**COUNT I**

**FLSA – FAILURE TO PAY OVERTIME WAGES**
**(PLAINTIFFS AND FLSA COLLECTIVE)**

106. Plaintiffs reallege and incorporate paragraphs 1-77 and 78-84, as though fully set forth herein.

107. Defendants are joint employers of Plaintiffs and the FLSA Collective members.

108. Pursuant to Section 7(k) of the FLSA, Plaintiffs and the FLSA Collective members were entitled to receive overtime compensation (or compensatory time off) at the rate of one and one-half times their regular rate of pay for all hours worked over 171 in a 28-day tour of duty.

109. Defendants suffered or permitted Plaintiffs and the FLSA Collective members to work, without compensation, both before the start of, and after the end of, their scheduled shifts. This has resulted in Plaintiffs and the FLSA Collective members routinely working in excess of 171 hours during their 28-day tours of duty without compensation.

110. By failing to pay Plaintiffs and the FLSA Collective members overtime compensation (or compensatory time) at a rate of one and one-half times their regular rates of pay for all hours worked over 171 in a 28-day tour of duty, Defendants violated the FLSA.

111. Defendants have failed to maintain accurate records of all time worked by Plaintiffs and the Class members as required by the FLSA.

112. Defendants did not act in good faith when they engaged in the above-described conduct.

113. By engaging in the above-described conduct, Defendants willfully, knowingly, and/or recklessly violated the FLSA.

114. Because of Defendants' policies or practices, Plaintiffs and the FLSA Collective members have not received overtime wages due to them pursuant to the FLSA.

115. The State of North Carolina has waived sovereign immunity for purposes of the FLSA. *See* N.C. Gen. Stat. § 143-300.35(a)(1). Accordingly, Defendants do not enjoy immunity from Plaintiffs' FLSA claims and may be sued under the Act. *See also*, *e.g.*, *Blackmon v. Cohen*, No. 1:17CV890, 2018 WL 2451246, at *4 (M.D.N.C. May 31, 2018).

116. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the FLSA Collective members have suffered and will continue to suffer a loss of income and other damages. Plaintiffs and the FLSA Collective are entitled to liquidated damages, attorneys' fees, and costs incurred in connection with this claim.

## COUNT II

### BREACH OF CONTRACT
### (PLAINTIFFS AND RULE 23 CLASS)

117. Plaintiffs reallege and incorporate paragraphs 1-77 and 85-106, as though fully set forth herein.

118.    Plaintiffs and the Rule 23 Class members "are expected to comply with all section, division, and work-unit specific requirements, policies, and procedures." New Employee Manual at 9 (Ex. D).

119.    "The DPS Human Resource Manual and the DPS Fiscal Manual are to be used in conjunction with the State Personnel Manual from the Office of State Personnel and the State Budget Manual." *Id*. The State Human Resources Manual, also known as the State Personnel Policy Manual, has been adopted by Defendants in full and governs the terms and conditions of Plaintiffs' and the Rule 23 Class's employment by Defendants.  Ex. B.[7]

120.    On information and belief, Plaintiffs and the Rule 23 Class members were provided copies of the Contracts at the beginning of, and/or during, their employment with Defendants and may have been required to execute and return signed copies to Defendants as a term or condition of their employment.

121.    Defendants made the following promises to Plaintiffs and the Rule 23 Class members, pursuant to the State Human Resources Manual (Ex. B):

    a.    Plaintiffs and the Rule 23 Class members will be paid their hourly rate of pay for all hours worked, up to 171 hours in a 28-day tour of duty.

    b.    All time Plaintiffs and the Rule 23 Class members are "required, suffered, or permitted to be on the employer's premises on duty or at a prescribed work place, except for meals or other periods when the employee is free from duty, is considered as hours worked."

---

[7] *See* https://www2.ncdps.gov/index2.cfm?a=000002,002186 (last accessed Oct. 23, 2019).

c.   Plaintiffs and the Rule 23 Class members "who [are] required to remain on call on the employer's premises or so close thereto that the time cannot be used for the employee's own purposes [are] considered working time."

122.   Defendants made the following additional promises to Plaintiffs and the Rule 23 Class members, pursuant to the New Employee Manual (Ex. D):

a.   "Position information (work schedule, overtime eligibility, shift premium eligibility, etc.) has been entered into the HR Payroll System. As a result, the HR Payroll System SAP system automatically calculates overtime, shift premium, holiday premium, weekend premium, and on-call/ callback pay based on the position profile."

b.   "All positions have minimum standard hours to be worked in an overtime period. The position you occupy determines your minimum standard hours (40 hrs, 160 hrs) and your overtime period (7-day, 28-day, etc.)."

c.   Plaintiffs and the Rule 23 Class members will be paid "for hours worked/leave taken from the 1st of the month through the last day of the month."

d.   Plaintiffs and the Rule 23 Class members "shall receive straight time compensation in either cash payout or compensatory leave for the remaining gap hours worked after offsetting depending on the position classification."

123.   Plaintiffs and the Rule 23 Class members accepted these promises by entering into and continuing their employment with Defendants and abiding by Defendants' policies, procedures, and manuals, forming express contracts between the parties.

124.    Defendants breached the Contracts by failing to pay Plaintiffs and the Rule 23 Class members for all hours worked, including gap hours. This failure to pay proximately caused damages to Plaintiffs and the Rule 23 Class members.

125.    The State of North Carolina is not immune from a claim for breach of contract. By entering into the contract, the governmental body waives immunity and consents to be sued for damages for breach of the contract. *See State v. Smith*, 289 NC 303 (1976). Accordingly, Defendants do not enjoy immunity from Plaintiffs' Breach of Contract claims.

126.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs and the Rule 23 Class members were damaged in that they were deprived of wages to which they were contractually entitled. Plaintiffs and the Rule 23 Class members are entitled to actual damages, attorneys' fees, and costs incurred in connection with this claim.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims asserted in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all the Class members, pray for judgment against Defendants as to each and every count, including:

1.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b);

2.    Ordering prompt notice, pursuant to 29 U.S.C. § 216(b), to all FLSA Collective members that this litigation is pending and that they have the right to "opt in" to this litigation;

3.    Certifying this case as a class action in accordance with Fed. R. Civ. P. 23 with respect to the Breach of Contract claims set forth above; appointing Plaintiffs and their counsel as representatives of the Rule 23 Class, and requiring Defendants to bear the cost of class notice;

4.    Declaring that Defendants willfully violated the FLSA as set forth above;

5.      Declaring that Defendants did not act in good faith with respect to the FLSA violations as set forth above;

6.      Declaring that Defendants breached their contractual obligations to Plaintiffs and the Class members as set forth above;

7.      Enjoining Defendants from future FLSA violations, including but not limited to maintaining accurate records of all time worked by Plaintiffs and the Class members;

8.      Awarding Plaintiffs and the Class members their actual damages for unpaid wages;

9.      Awarding Plaintiffs and the Class members liquidated damages in an amount equal to the unpaid overtime wages found due;

10.     Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing and prosecuting this action;

11.     Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

12.     Granting such further relief as this Court deems appropriate.


Respectfully submitted,

*/s/ Daniel K. Bryson*
Daniel K. Bryson
N.C. State Bar No.: 15781
Patrick M. Wallace
N.C. State Bar No.: 48138
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, NC 27603
(919) 600-5000
(919) 600-5035 Facsimile
Email:  dan@wbmllp.com
             pat@wbmllp.com


Gary E. Mason*
Danielle L. Perry*
**WHITFIELD BRYSON & MASON LLP**

5101 Wisconsin Ave NW, Suite 305
Washington, DC 20016
(202) 429-2290
(202) 429-2294 Facsimile
Email:  gmason@wbmllp.com
          dperry@wbmllp.com

Adam J. Levitt*
Laura E. Reasons*
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
(312) 214-7900
(312) 253-1443 Facsimile
Email:  alevitt@dicellolevitt.com
          lreasons@dicellolevitt.com

Charles J. LaDuca*
R. Michael Smith*
Katherine Van Dyck*
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
(202) 789-3960
(202) 789-1813 Facsimile
Email:  charles@cuneolaw.com
          mike@cuneolaw.com
          kvandyck@cuneolaw.com

Michael J. Flannery*
**CUNEO GILBERT & LADUCA, LLP**
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO  63105
(314) 226-1015
(202) 789-1813 Facsimile
Email:  mflannery@cuneolaw.com

Shanon J. Carson*
Sarah R. Schalman-Bergen*
Shoshana Savett*
Krysten Connon*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-4656
(215) 875-4604 Facsimile
Email:   scarson@bm.net

sschalman-bergen@bm.net
stsavett@bm.net
kconnon@bm.net

***Counsel for Plaintiffs and the Putative Class and Collective***

*\* To File Notice of Special Appearance*